1  IRELL & MANELLA LLP
   Morgan Chu (mchu@irell.com) (70446)
2  Samuel K. Lu (slu@irell.com) (171969)
   Alan J. Heinrich (aheinrich@irell.com) (212782)
3  1800 Avenue of the Stars, Suite 900
   Los Angeles, California 90067-4276
4  Telephone: (310) 277-1010
   Facsimile: (310) 203-7199
5
   Attorneys for Plaintiffs
6  Avago Technologies U.S. Inc. and
   Avago Technologies ECBU IP (Singapore) Pte., Ltd.
7

ORIGINAL
FILED

08 NOV 20  PM 3: 20

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA S.J.

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                 SAN JOSE DIVISION

11  AVAGO TECHNOLOGIES U.S. INC.,        Case No.
    a Delaware corporation; and AVAGO          C08   05268
12  TECHNOLOGIES ECBU IP
    (SINGAPORE) PTE., LTD., a            COMPLAINT FOR:
13  Singapore corporation,

14              Plaintiffs,             (1) VIOLATION OF CALIFORNIA
                                            UNIFORM TRADE SECRETS
15        vs.                               ACT
                                        (2) BREACH OF CONTRACT
16  MICROSOFT CORPORATION, a           (3) BREACH OF THE IMPLIED
    Washington corporation; and             COVENANT OF GOOD FAITH
17  MARSHALL T. DEPUE a/k/a MARK            AND FAIR DEALING
    DEPUE, an individual,               (4) VIOLATION OF CALIFORNIA
18                                          PENAL CODE § 502
                Defendants.             (5) INTENTIONAL
19                                          INTERFERENCE WITH
                                            CONTRACT
20                                      (6) VIOLATION OF CALIFORNIA
                                            UNFAIR COMPETITION LAW
21

22                                      DEMAND FOR JURY TRIAL

23

24

25

26

27

28

1964065

COMPLAINT FOR VIOLATION OF THE CALIFORNIA UNIFORM TRADE SECRETS ACT, BREACH
OF CONTRACT, AND OTHER CLAIMS

1    Plaintiffs Avago Technologies U.S. Inc. and Avago Technologies ECBU IP
2  (Singapore) Pte., Ltd., by and through their undersigned attorneys, allege for their
3  Complaint as follows:

### THE PARTIES

5    1.    Plaintiff Avago Technologies U.S. Inc. is a corporation organized and
6  existing under the laws of the State of Delaware with its principal place of business
7  in San Jose, California.  Plaintiff Avago Technologies ECBU IP (Singapore) Pte.,
8  Ltd. is a corporation organized and existing under the laws of the Republic of
9  Singapore with its principal place of business in Singapore.  Plaintiffs Avago
10 Technologies U.S. Inc. and Avago Technologies ECBU IP (Singapore) Pte., Ltd.
11 will be collectively referred to herein as "Avago."

12   2.    Defendant Microsoft Corporation ("Microsoft") is a corporation
13 organized and existing under the laws of the State of Washington with its principal
14 place of business in Redmond, Washington.

15   3.    Defendant Marshall T. DePue ("DePue"), also known as Mark DePue,
16 is an individual and a citizen of the State of Washington.

### JURISDICTION

18   4.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332
19 because the amount in controversy exceeds the value of $75,000 exclusive of costs
20 and interest and there is complete diversity of citizenship between the Plaintiffs and
21 Defendants.

### VENUE

23   5.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2).  A
24 substantial part of the events giving rise to the claims alleged in this Complaint
25 occurred in this judicial district, and a significant number of witnesses and other
26 factual evidence may be found in this judicial district.  Furthermore, Avago has
27 suffered harm in this judicial district because of the misconduct of Microsoft and
28 DePue.

**INTRADISTRICT ASSIGNMENT**

6.      Intradistrict assignment is proper in the San Jose Division, pursuant to L.R. 3-2(c) and L.R. 3-2(e), because a substantial part of the events giving rise to the claims alleged in this Complaint occurred in the County of Santa Clara. Furthermore, Avago has suffered harm in the County of Santa Clara because of the misconduct of Microsoft and DePue.

**FACTUAL BACKGROUND**

7.      Avago is one of the largest privately-held semiconductor companies in the world.  Among Avago's innovative technologies are Avago's optoelectronics components and subsystems, including its groundbreaking optical navigation technology for light emitting diode ("LED") and laser-based optical mouse applications.  Avago is a world leader in optical mouse navigation technology.

**DePue's Employment with Avago and His Employment Agreement**

8.      Defendant DePue was employed by Avago or its predecessor companies from approximately June 30, 2000 until his voluntary resignation on or about April 14, 2006.  DePue was a research and design engineer active in the research and development of Avago's optical navigation technology, including new and innovative products and potential products for LED and laser-based optical mouse applications.  At the time of his resignation, DePue's title was a Senior Research Scientist.  During his employment with Avago, DePue worked at Avago's offices in San Jose, California.

9.      As an Avago research and design engineer, DePue had extensive knowledge of and access to a wealth of Avago confidential information and trade secrets.  In addition, as part of his employment with Avago, DePue was tasked with conducting his own research and experiments into new optical navigation applications and technologies and was provided with the confidential research and experiments of other Avago employees working in this field.  DePue also participated in numerous working group meetings, brainstorming sessions, and

1    internal conferences regarding the on-going confidential research and development
2    of Avago's optical navigation technology.

3        10.    Among other things, DePue's research and the Avago confidential
4    information and trade secrets to which he had access and knowledge covered new
5    ways of optimizing the navigation capabilities of optical mice to enable them to
6    track motion on a wider variety of surfaces.  Avago's confidential information and
7    trade secrets in this area, including DePue's research, is the source of substantial
8    revenue and profits for Avago.  Prior to his resignation on April 14, 2006, DePue's
9    research at Avago included experiments into blue-LED navigation technologies.

10        11.    In the course of his employment at Avago, DePue signed a certain
11    Agreement Regarding Confidential Information and Proprietary Developments
12    dated September 8, 2005 ("ARCIPD"), attached hereto as Exhibit A.  ("New SPG"
13    in the ARCIPD refers to Avago Technologies U.S. Inc.)  The ARCIPD is a binding
14    contract between Avago Technologies U.S. Inc. and DePue that obligates DePue to
15    keep "in confidence and trust" all Avago Confidential Information (as defined in the
16    ARCIPD) and "to use such information only in the performance of [Avago] duties."
17    Confidential Information is defined in the ARCIPD (and used herein) as "trade
18    secrets, confidential business and technical information, and know-how not
19    generally known to the public…which is acquired or produced by [DePue] in
20    connection with [his] employment by [Avago]."  The ARCIPD further states that
21    "Confidential Information may include, without limitation, information on [Avago]
22    organizations, staffing, finance, information of employee performance,
23    compensation of others, research and development, manufacturing and marketing, as
24    well as information which [Avago] receives from others under an obligation of
25    confidentiality."

26        12.    In the ARCIPD, DePue agrees that all of his work for Avago and
27    materials related thereto are the property of Avago.  The ARCIPD states, "The
28    product of all work performed by me during and within the scope of my [Avago]

1964065

- 3 -

1  employment including, without limitation, any reports, documents, drawings,

2  computer programs, devices and models, will be the property of [Avago]." The

3  ARCIPD obligates DePue to disclose promptly to Avago all "Proprietary

4  Developments," defined (and used herein) as all "inventions and discoveries

5  (whether or not patentable), designs, works of authorship, mask works,

6  improvements, data, processes, computer programs and software" that are

7  "conceived or made by [DePue] alone or with others" while he is employed by

8  Avago and that "relate to the research and development or the business of [Avago],

9  or that result from work performed by [DePue] for [Avago]."

10        13.    The ARCIPD also obligates DePue to "return all [Avago] property to

11  [Avago]" upon termination of DePue's employment with Avago.

**Microsoft's Recruitment of DePue**

13        14.    Unbeknownst to Avago, on or about February 13, 2006, DePue was

14  approached via email by Mark Alkhazov, a recruiter employed by Defendant

15  Microsoft.  Microsoft directly and indirectly competes with Avago in the

16  development and manufacture of optical navigation products.  Alkhazov informed

17  DePue that Microsoft was looking to hire an engineer with a background in optics.

18  DePue responded to Alkhazov's email message within hours and attached a copy of

19  his resume.  After reviewing DePue's resume, Alkhazov responded to DePue and

20  expressed interest in interviewing DePue by phone for the position, which Alkazov

21  described in detail.  The position described by Microsoft closely mirrored DePue's

22  responsibilities at Avago.  As Alkhazov's email stated, "Microsoft is a world leader

23  in the design of personal computer input devices.  We are currently looking for an

24  innovative person with a passion for technology to drive Optical-Mechanical

25  product development.  Primary responsibilities include the optical design of imaging

26  and illumination systems for use in optical input devices."  The optical input devices

27  described by Microsoft include computer mice.

28

1964065

- 4 -

1         15.    DePue was concerned that the Microsoft position would require

2   additional knowledge, including regarding color theory and radiometry, that DePue

3   had not yet gained through his work at Avago.  As an Avago research and design

4   engineer, however, DePue had access to Avago Confidential Information on these

5   and related subjects.  DePue pretended that he was on international travel in order to

6   "buy time" to delay his interview with Microsoft.  Avago is informed and believes,

7   and on that basis alleges, that DePue used this "bought time" to review Avago

8   Confidential Information in preparation for his interview with Microsoft.

9         16.    Avago is informed and believes, and on that basis alleges, that DePue

10  had one or more interviews with Microsoft in which Avago Confidential

11  Information was discussed.  Avago is further informed and believes, and on that

12  basis alleges, that Microsoft made an offer of employment to DePue.

13        17.    DePue did not disclose his contact with Microsoft to his supervisors at

14  Avago.  DePue also did not inform Avago of his use and disclosure of Avago

15  Confidential Information in his interviews with Microsoft.

16        **DePue's Resignation from Avago and Destruction of Data**

17        18.    DePue tendered his resignation to Avago on or about April 14, 2006.

18  DePue's last day of employment at Avago was also on or about April 14, 2006.

19        19.    On that same day, April 14, 2006, DePue's Avago supervisor, Waguih

20  Ishak, conducted an in-person exit interview with DePue.  In the course of this

21  interview, Ishak presented DePue with a written Functional Exit Interview Memo

22  ("Exit Memo"), which DePue completed and signed.  In the Exit Memo, DePue

23  acknowledged that he had received "a variety of Avago Technologies confidential

24  information and technology" during his employment with Avago.  In his own

25  handwriting, DePue listed the most sensitive areas of such Avago confidential

26  information and technology as "laser navigation," "laser mouse," and "consumer

27  electronics."  The Exit Memo also explains that Avago considers other categories of

28  information, including "New product R&D and introduction plans," to be

1   confidential. The Exit Memo specifically reminded DePue of his obligation to keep

2   such information confidential.

3       20.    Upon leaving Avago, DePue returned his laptop computer to Avago

4   (the "DePue Laptop"). This computer and its contents were Avago property and

5   were used by DePue in the course of his research and development work at Avago.

6   In violation of his ARCIPD with Avago, DePue selectively deleted and destroyed

7   copious amounts of data belonging to Avago. Several days prior to surrendering his

8   laptop to Avago, DePue ran a utility called Webroot Window Washer. The sole

9   purpose of this software is to overwrite computer files to render them permanently

10  unrecoverable. Webroot Window Washer includes a "one-click shredder" feature

11  that allows the user to "simply and conveniently shred a folder and all of its

12  contents, or just a single file, in one step. Just a simple right-click will permanently

13  overwrite these files, making them unrecoverable." Avago is informed and believes,

14  and on that basis alleges, that the computer data DePue destroyed using the Webroot

15  Window Washer application included data and information on research and

16  experiments DePue had been conducting at Avago relating to blue-LED navigation

17  technologies. This data and information was the property of Avago and constituted

18  Avago Confidential Information.

19      21.    Following DePue's resignation, Avago employees sought data and

20  information on DePue's latest research activities so that they could continue his

21  optical navigation research, but they found little if any such data and information.

22  Avago employees also asked DePue where he had stored his latest data on the

23  DePue Laptop. DePue indicated that the data was still available on the DePue

24  Laptop. DePue did not disclose that he had destroyed much of this data.

25      22.    Avago employees also sought the return of DePue's hard copy

26  laboratory notebooks that contained DePue's research notes and data (the "DePue

27  Lab Notebooks"). DePue, however, claimed that he had reported one notebook

28

1964065

COMPLAINT FOR VIOLATION OF THE CALIFORNIA UNIFORM TRADE SECRETS ACT, BREACH
OF CONTRACT, AND OTHER CLAIMS

1  stolen and had returned other notebooks to the library of Avago's corporate

2  predecessor.  These claims were false.

3  <center>**Avago's Efforts to Investigate DePue's New Employment**</center>

4      23.    Avago is informed and believes, and on that basis alleges, that DePue

5  became an employee of Defendant Microsoft in or about May 2006.

6      24.    Following DePue's departure from Avago, Avago became concerned

7  that DePue's work at Microsoft might be similar to his work for Avago.  On or about

8  June 20, 2006, Avago, through its counsel, wrote to DePue to remind him of his

9  contractual obligations, including his obligation under the ARCIPD to maintain the

10  confidentiality of Avago Confidential Information.  Avago's counsel wrote, "Avago

11  is especially concerned about your departure because you left to take a position with

12  Microsoft Corporation ('Microsoft') and we have been informed that you will be

13  working at Microsoft developing optical mice, and even more specifically laser

14  mice, the same products on which you worked at Avago."  Avago's counsel included

15  with this letter a copy of the ARCIPD signed by DePue.  A copy of Avago's letter is

16  attached as Exhibit B.

17      25.    Avago received no response from DePue to its letter, so Avago's

18  counsel wrote to Microsoft on or about June 28, 2006.  Avago's counsel reiterated

19  Avago's concerns regarding confidential information and attached Avago's letter to

20  DePue as well as the ARCIPD.  Avago's counsel requested information on what

21  safeguards (if any) Microsoft had implemented to protect Avago confidential and

22  proprietary information.  Avago's counsel also specifically requested confirmation

23  that DePue would not be assigned to any projects involving optical mice.  A copy of

24  Avago's second letter is attached as Exhibit C.

25      26.    More than a month later, on or about August 2, 2006, Microsoft

26  responded to Avago's letter.  Microsoft confirmed that it had reviewed DePue's

27  ARCIPD with Avago and was aware of DePue's obligations to Avago under that

28  Agreement.  Microsoft also assured Avago that "Mr. DePue has been assigned to

1964065

1 work on a project that would not benefit from use of any 'confidential information'

2 covered by the ARCIPD." A copy of Microsoft's letter is attached as Exhibit D.

3      27.    Avago is informed and believes, and on that basis alleges, that

4 Microsoft assigned DePue to work on the development of optical mouse technology

5 from the outset of his employment at Microsoft. Avago is further informed and

6 believes, and on that basis alleges, that DePue's work at Microsoft was very similar

7 to his work at Avago, contrary to Microsoft's statements in its August 2, 2006 letter.

8    **DePue's "Invention" of Microsoft's BlueTrack Optical Mouse Technology**

9      28.    In or about August 2008, Microsoft announced a new optical mouse

10 product using a technology called "BlueTrack." On its product website and in

11 industry press, Microsoft identifies DePue as the lead inventor of this technology.

12 As described by Microsoft, this technology consists of several innovations,

13 including the use of a wide-beam blue LED light source, which allegedly allows for

14 high-resolution and high-contrast images.

15      29.    Significant aspects of the Microsoft BlueTrack technology reflect

16 DePue's confidential research and development activities while employed by Avago.

17 Avago is informed and believes, and on that basis alleges, that DePue used his

18 knowledge of Avago Confidential Information in the research, design, and

19 development of Microsoft's BlueTrack technology. Avago is further informed and

20 believes, and on that basis alleges, that Microsoft's BlueTrack technology itself

21 incorporates Avago Confidential Information. Before leaving Avago, DePue

22 conducted research and experiments relating to blue-LED optical navigation.

23 Avago is informed and believes, and on that basis alleges, that DePue destroyed

24 records and data relating to this research on the DePue Laptop before returning it to

25 Avago. Avago is further informed and believes, and on that basis alleges, that

26 DePue retained his own copy of these records and data and used them in the

27 development of Microsoft's BlueTrack technology.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# FIRST CAUSE OF ACTION

### Violation of the California Uniform Trade Secrets Act

### (Against DePue and Microsoft)

30.    Avago realleges and incorporates herein by reference paragraphs 1 through 29 as though fully set forth herein.

31.    Microsoft and DePue violated the California Uniform Trade Secret Act, Cal. Civ. Code § 3426 et seq., by misappropriating Avago trade secrets relating to optical navigation technology (the "Avago Trade Secrets").  Microsoft and DePue have actually misappropriated Avago's trade secrets and threaten further misappropriation of Avago's trade secrets.

32.    The Avago Trade Secrets consist of formulas, patterns, compilations, programs, devices, methods, techniques, business places, test setups, experimental data, or other information or processes that derive independent economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use.  The Avago Trade Secrets are not generally known to the public or generally known in the industry, and their value is derived from the fact that they are secret.

33.    The Avago Trade Secrets are the subject of efforts that are reasonable under the circumstances to maintain their secrecy.  These efforts include employee agreements like the ARCIPD, the exit interview process, logging and coding of lab notebooks containing primary research, the return of Avago property such as laptop computers and lab notebooks upon an employee's departure, password protected computer systems, and periodic employee training sessions regarding the importance of protecting Avago's intellectual property.

34.    As detailed herein, DePue had express and implied contractual obligations to maintain the secrecy of the Avago Trade Secrets, not disclose the Avago Trade Secrets to any person or entity outside of Avago, and not use the

1    Avago Trade Secrets for any purpose other than the performance of Avago-related

2    duties.

3         35.    In addition, DePue was aware, from the nature of the Avago Trade

4    Secrets and the context of their creation, acquisition, and use in the course of

5    Avago's business, that the Avago Trade Secrets were confidential and proprietary

6    and that DePue was expected to keep them confidential and not disclose or use them

7    for the benefit of a future employer or for his own personal gain.  Furthermore, as a

8    former employee and agent of Avago, DePue owed a duty to strictly maintain the

9    secrecy and confidentiality of Avago's Trade Secret information and not to use it to

10   the detriment of Avago.

11        36.    Avago is informed and believes, and on that basis alleges, the

12   following:  In breach of these contractual obligations and duties, and without

13   Avago's consent, DePue copied, stole, disclosed, used, and otherwise

14   misappropriated the Avago Trade Secrets for his research and design work at

15   Microsoft on optical mouse technology, specifically the Microsoft BlueTrack

16   technology.  DePue disclosed the Avago Trade Secrets to Microsoft and fellow

17   Microsoft employees in the course of his research and design work at Microsoft on

18   optical mouse technology.  DePue continues to disclose, use, and misappropriate

19   Avago Trade Secrets in his work with Microsoft on optical mice.  Microsoft

20   acquired, copied, and used the Avago Trade Secrets, including in the design,

21   manufacture, and testing of its BlueTrack mice and other optical mice.  In addition,

22   Microsoft disseminated the Avago Trade Secrets to its employees, affiliates, and

23   suppliers.  DePue and Microsoft undertook all of these activities without Avago's

24   consent.

25        37.    Microsoft knew or had reason to know that the Avago Trade Secrets

26   disclosed to it by DePue were acquired by improper means and in breach of DePue's

27   contractual obligations and duties to Avago to, among other things, maintain the

28   secrecy of the Avago Trade Secrets.

1964065

- 10 -

1        38.    Avago is entitled to recover damages for its actual losses, including

2    profits lost because of the development and sale of Microsoft's BlueTrack optical

3    mice using misappropriated Avago Trade Secrets.  Avago is further entitled to

4    actual losses consisting of its efforts to identify, mitigate, and safeguard against

5    Microsoft and DePue's misappropriation.

6        39.    Avago is entitled to recovery for Microsoft and DePue's unjust

7    enrichment and/or a reasonable royalty based on the past and future benefits

8    received by Microsoft and DePue caused by the misappropriation of Avago Trade

9    Secrets by Microsoft and DePue.

10       40.    Avago is entitled to injunctive relief against Microsoft and DePue.

11   Microsoft and DePue have actually misappropriated the Avago Trade Secrets and

12   threaten to further misappropriate them.  Unless and until enjoined by an order of

13   this Court, Microsoft and DePue's wrongful conduct in misappropriating and using

14   the Avago Trade Secrets will continue to damage Avago, leaving Avago no

15   adequate remedy at law for such acts and threatened acts.

16       41.    DePue and Microsoft willfully and maliciously misappropriated the

17   Avago Trade Secrets, and Avago is entitled to an award of punitive damages and

18   attorneys fees in an appropriate amount.

19                   **SECOND CAUSE OF ACTION**

20                         **Breach of Contract**

21                        **(Against DePue)**

22       42.    Avago realleges and incorporates herein by reference paragraphs 1

23   through 41 and 54 through 59 as though fully set forth herein.

24       43.    Avago and DePue are parties to a valid and binding Agreement

25   Regarding Confidential Information and Proprietary Developments ("ARCIPD")

26   dated September 8, 2005 (attached hereto as Exhibit A).

27

28

COMPLAINT FOR VIOLATION OF THE CALIFORNIA UNIFORM TRADE SECRETS ACT, BREACH
OF CONTRACT, AND OTHER CLAIMS

44.    Avago has performed all material conditions, covenants, and promises required to be performed by it in accordance with the terms and conditions of the ARCIPD.

45.    DePue breached the ARCIPD.  DePue's breaches of the ARCIPD include, but are not limited to, failing to return Avago property to Avago upon DePue's termination (including data on the DePue Laptop and the DePue Lab Notebooks), destroying Avago property (including data on the DePue Laptop), failing to hold Avago Confidential Information (including Avago Trade Secrets) in confidence, disclosing Avago Confidential Information (including Avago Trade Secrets) to Microsoft and other Microsoft employees, using Avago Confidential Information (including Avago Trade Secrets) for the benefit of Microsoft, and failing to disclose all Proprietary Developments to Avago, including the research he conducted and data he collected in his final months at Avago.

46.    As a direct and proximate result of the breaches of contract described herein, Avago has been and will continue to be damaged in an amount to be proven at trial.

### THIRD CAUSE OF ACTION

**Breach of the Implied Covenant of Good Faith and Fair Dealing**

**(Against DePue)**

47.    Avago realleges and incorporates herein by reference paragraphs 1 through 29 and 54 through 59 as though fully set forth herein.

48.    Avago and DePue are parties to a valid and binding Agreement Regarding Confidential Information and Proprietary Developments ("ARCIPD") dated September 8, 2005 (described above).

49.    Avago has performed all material conditions, covenants, and promises required to be performed by it in accordance with the terms and conditions of the ARCIPD.

1964065

COMPLAINT FOR VIOLATION OF THE CALIFORNIA UNIFORM TRADE SECRETS ACT, BREACH OF CONTRACT, AND OTHER CLAIMS

1       50.    DePue owed Avago the duty to act fairly and in good faith, and in a

2  commercially reasonable manner, and to refrain from doing anything that prevented

3  Avago from receiving the intended benefits of the ARCIPD.

4       51.    By the acts alleged herein, DePue breached the implied covenant of

5  good faith and fair dealing.

6       52.    As a direct and proximate result of the breaches of the implied

7  covenant of good faith and fair dealing described herein, Avago has been and will

8  continue to be damaged in an amount to be proven at trial.

9                      **FOURTH CAUSE OF ACTION**

10              **Violation of California Penal Code § 502**

11                        **(Against DePue)**

12       53.    Avago realleges and incorporates herein by reference paragraphs 1

13  through 29 and 43 through 52 as though fully set forth herein.

14       54.    The Comprehensive Computer Data Access & Fraud Act, Cal. Penal

15  Code § 502, protects the integrity of all types and forms of lawfully created

16  computers, computer systems, and computer data in order to protect, among other

17  things, the well-being of business concerns and others within this state that lawfully

18  utilize those computers, computer systems, and data.

19       55.    DePue knowingly and without Avago's permission altered, damaged,

20  deleted, and destroyed certain data, computer software, and/or computer programs

21  that resided or existed on the DePue Laptop.  This data, computer software, and/or

22  computer programs was rendered unreadable and unrecoverable by DePue's actions.

23  Avago is informed and believes, and on that basis alleges, that this data, computer

24  software, and/or computer programs consisted of records and data related to DePue's

25  research relating to optical navigation devices in the course of his employment at

26  Avago.

27

28

56.   At all relevant times, Avago is and has been the owner of the DePue Laptop and the data, computer software, and/or computer programs that DePue altered, damaged, deleted, and destroyed.

57.   As a direct and proximate result of DePue's acts described herein, Avago has been damaged and caused loss in an amount to be proven at trial. Avago has suffered the loss of the research and data that DePue deleted and destroyed. Avago has also been damaged because DePue's acts masked and concealed breaches of the ARCIPD and threatened and actual acts of misappropriation of the Avago Trade Secrets. Avago has suffered losses and has been damaged because of its remedial actions in investigating DePue's acts of data deletion and destruction as alleged herein.

58.   In acting as alleged herein, DePue acted in conscious disregard of Avago's rights and with oppression, fraud, and malice, such that punitive damages should be awarded to punish DePue and to deter similar conduct in the future.

59.   Avago is entitled to reasonable attorneys fees.

## FIFTH CAUSE OF ACTION

### Intentional Interference with Contract

### (Against Microsoft)

60.   Avago realleges and incorporates herein by reference paragraphs 1 through 29 and 43 through 59 as though fully set forth herein.

61.   Avago has a valid contract, the ARCIPD, with DePue.

62.   At all relevant times, Microsoft knew that DePue had entered into the ARCIPD with Avago.

63.   By the acts described herein, Microsoft intentionally acted to induce DePue to breach his contractual agreement with Avago and intentionally acted to disrupt the contractual relationship between Avago and DePue. Microsoft's acts were designed to, and did in fact, induce a breach in DePue's ARCIPD contract with Avago and disrupt this contractual relationship between Avago and DePue.

COMPLAINT FOR VIOLATION OF THE CALIFORNIA UNIFORM TRADE SECRETS ACT, BREACH
OF CONTRACT, AND OTHER CLAIMS

1      64.    DePue breached the ARCIPD by the acts described herein, including by

2  using and disclosing Avago Confidential Information (excluding the Avago Trade

3  Secrets).

4      65.    This Fifth Cause of action is timely asserted by Avago.  Avago is

5  informed and believes, and on that basis alleges, that Microsoft has fraudulently and

6  deceptively concealed its acts of intentional interference from Avago.  After DePue

7  began work at Microsoft, Avago diligently investigated the nature of his

8  employment and advised Microsoft and DePue of DePue's obligations under the

9  ARCIPD.  In response to Avago's inquiry, Microsoft affirmatively represented that

10  DePue was not working in any area that would benefit from his knowledge of

11  Avago Confidential Information.  Because of this fraudulent and deceptive conduct

12  by Microsoft, Avago was unable to discover this claim against Microsoft until

13  DePue's involvement in Microsoft's BlueTrack optical mouse was made public in or

14  about August 2008.  Moreover, even if Microsoft had not made its misrepresentation

15  regarding DePue's work, the Fifth Cause of Action would still be timely.  Avago had

16  no reason to believe that Microsoft had intentionally interfered or would

17  intentionally interfere with the ARCIPD or disrupt the contractual relationship

18  between DePue and Avago until DePue's involvement in Microsoft's BlueTrack

19  optical mouse was made public.

20      66.    As a direct and proximate result of the interference described herein,

21  Avago has been and will continue to be damaged in an amount to be proven at trial.

22      67.    In acting as alleged herein, Microsoft acted in conscious disregard of

23  Avago's rights and with oppression, fraud, and malice, such that punitive damages

24  should be awarded to punish Microsoft and to deter similar conduct in the future.

25

26

27

28

1                         **SIXTH CAUSE OF ACTION**

2           **Violation of the California Unfair Competition Law**

3                         **(Against Microsoft)**

4       68.    Avago realleges and incorporates herein by reference paragraphs 1

5 through 29 and 43 through 67 as though fully set forth herein.

6       69.    Microsoft's conduct described herein constitutes unfair competition and

7 a violation of the California Unfair Competition Law, Bus. & Prof. Code § 17200 et

8 seq., because Microsoft engaged in unfair, illegal, and/or fraudulent business

9 practices as described herein.

10       70.    Among other Microsoft acts, and without limitation, Avago is informed

11 and believes, and on that basis alleges, that Microsoft misrepresented the substance

12 of DePue's work at Microsoft in its August 2, 2006 letter to Avago's counsel.

13 Microsoft's August 2, 2006 letter stated, "Mr. DePue has been assigned to work on a

14 project that would not benefit from use of any 'confidential information' covered by

15 the ARCIPD." Avago is informed and believes, and on that basis alleges, that at or

16 around the time of this letter, DePue was engaged in work that was very similar to

17 his work at Avago. Avago is further informed and believes, and on that basis

18 alleges, that DePue's work at Microsoft not only "would" benefit from Avago's

19 Confidential Information but that DePue's work at Microsoft did in fact benefit from

20 DePue's knowledge of Avago Confidential Information, in violation of California

21 law and DePue's contractual and other obligations to Avago.

22       71.    Microsoft's August 2, 2006 letter was an unfair, illegal, and/or

23 fraudulent business practice forbidden by the California Unfair Competition Law.

24 Avago relied on the statements regarding DePue's work at Microsoft in Microsoft's

25 August 2, 2006 letter. Avago's reliance on Microsoft's August 2, 2006 letter

26 benefitted Microsoft by delaying further action by Avago that would have prevented

27 or uncovered the wrongful acts alleged herein, including DePue's multiple breaches

28 of the ARCIPD and Microsoft and DePue's wrongful use, disclosure, and

1    misappropriation of Avago Confidential Information including Avago Trade

2    Secrets.

3         72.    Additionally, Microsoft engaged in unfair, illegal, and/or fraudulent

4    business practices through the use and disclosure of Avago Confidential Information

5    (other than Avago Trade Secrets).  Avago is informed and believes, and on that

6    basis alleges, the following:  DePue copied, stole, disclosed, used, and otherwise

7    misappropriated Avago Confidential Information (other than Avago Trade Secrets)

8    for his research and design work at Microsoft on optical mouse technology,

9    specifically the Microsoft BlueTrack technology.  DePue disclosed Avago

10   Confidential Information (other than Avago Trade Secrets) to Microsoft and fellow

11   Microsoft employees in the course of his research and design work at Microsoft on

12   optical mouse technology.  DePue continues to disclose, use, and misappropriate

13   Avago Confidential Information (other than Avago Trade Secrets) in his work with

14   Microsoft on optical mice.  Microsoft acquired, copied, and used Avago

15   Confidential Information (other than Avago Trade Secrets), including in the design,

16   manufacture, and testing of its BlueTrack mice and other optical mice.  In addition,

17   Microsoft disseminated Avago Confidential Information (other than Avago Trade

18   Secrets) to its employees, affiliates, and suppliers.  DePue and Microsoft undertook

19   all of these activities without Avago's consent.

20        73.    As a direct and proximate result of Microsoft's unfair competition,

21   Microsoft has unlawfully acquired, and continues to acquire, an unfair competitive

22   advantage over Avago.  Microsoft has engaged, and continues to engage, in

23   wrongful business conduct to its advantage and to the detriment of Avago.

24        74.    The unfair, illegal, and/or fraudulent business practices alleged herein

25   are continuing.  Injunctive relief under the Unfair Competition Law is necessary to

26   prevent and restrain further violations by Microsoft

27

28

COMPLAINT FOR VIOLATION OF THE CALIFORNIA UNIFORM TRADE SECRETS ACT, BREACH
OF CONTRACT, AND OTHER CLAIMS

1

## **PRAYER FOR RELIEF**

2      WHEREFORE, Avago prays for judgment against DePue and Microsoft as

3  follows:

4        A.     For preliminary and permanent injunctive relief;

5        B.     For compensatory damages according to proof;

6        C.     For exemplary and punitive damages according to proof;

7        D.     For interest at the maximum rate permitted by law;

8        E.     For reasonable attorneys' fees and costs of suit incurred herein; and

9        F.     For such other and further relief as the Court deems just and proper.

10

11

12  Dated:  November 20, 2008         Respectfully submitted,

13                             IRELL & MANELLA LLP

14

15

16                       By:

                                   Alan J. Heinrich

17

18                      Attorneys for Plaintiffs

19                      Avago Technologies U.S. Inc. and
                         Avago Technologies ECBU IP

20                         (Singapore) Pte., Ltd.

21

22

23

24

25

26

27

28

COMPLAINT FOR VIOLATION OF THE CALIFORNIA UNIFORM TRADE SECRETS ACT, BREACH
OF CONTRACT, AND OTHER CLAIMS

1

**DEMAND FOR JURY TRIAL**

2      Plaintiffs Avago Technologies U.S. Inc. and Avago Technologies ECBU IP

3  (Singapore) Pte., Ltd. hereby demand a trial by jury on all issues and claims triable

4  by jury.

5

6

7  Dated:  November 20, 2008                Respectfully submitted,

8                                           IRELL & MANELLA LLP

9

10                                          By: _____

11                                              Alan J. Heinrich

12

13                                          Attorneys for Plaintiffs
                                            Avago Technologies U.S. Inc. and
14                                          Avago Technologies ECBU IP
                                                (Singapore) Pte., Ltd.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1964065

COMPLAINT FOR VIOLATION OF THE CALIFORNIA UNIFORM TRADE SECRETS ACT, BREACH
OF CONTRACT, AND OTHER CLAIMS

# EXHIBIT A

## Agreement Regarding Confidential Information and Proprietary Developments (ARCIPD)

Please type or print in black ink.

| EMPLOYEE NAME (Last, First, M.I.) | EMPLOYEE NUMBER |
|---|---|
| Defue, Mark | 00569893 |

1. I am employed or desire to be employed by "New SPG" (SPG). I understand, however, that this Agreement is not a promise or a contract for employment by SPG.

2. This Agreement concerns trade secrets, confidential business and technical information, and know-how not generally known to the public, (hereinafter "Confidential Information"), which is acquired or produced by me in connection with my employment by SPG. Confidential Information may include, without limitation, information on SPG organizations, staffing, finance, information of employee performance, compensation of others, research and development, manufacturing and marketing, as well as information which SPG receives from others under an obligation of confidentiality. I agree:

    a. to use such information only in the performance of SPG duties;

    b. to hold such information in confidence and trust; and

    c. to use all reasonable precautions to assure that such information is not disclosed to unauthorized persons or used in an unauthorized manner, both during and after my employment with SPG.

3. This Agreement also concerns inventions and discoveries (whether or not patentable), designs, works of authorship, mask works, improvements, data, processes, computer programs and software (hereinafter called "Proprietary Developments") that are conceived or made by me alone or with others while I am employed by SPG and that relate to the research and development or the business of SPG, or that result from work performed by me for SPG. Such Proprietary Developments are the sole property of SPG, and I agree:

    a. to disclose them promptly to SPG;

    b. to assign them to SPG; and

    c. to execute all documents and cooperate with SPG in all necessary activities to obtain patent, copyright, mask works and/or trade secret protection in all countries, at SPG's expense.

In compliance with prevailing provisions of relevant state statutes,[1] this Agreement does not apply to an invention for which no equipment, supplies, facility, or trade secret information of the employer was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) to the business of the employer, or (ii) to the employers actual or demonstrably anticipated research or development, or (b) the invention results form any work performed by the employee for the employer.

4. I agree to honor any valid disclosure or use restrictions on Confidential Information known to me and received from any former employers or any other parties prior to my employment by SPG, and I agree not to bring onto the premises of SPG any such information in whatever physical form without prior written consent of such former employers or other parties.

5. The product of all work performed by me during and within the scope of my SPG employment including, without limitation, any reports, documents, drawings, computer programs, devices and models, will be the property of SPG; and SPG will have the sole right to use, sell, license, publish or otherwise disseminate or transfer rights in such a work product.

6. I will not remove any SPG property from SPG premises without SPG's permission.

7. I agree not to disrupt, damage or interfere with the operation or business of SPG by soliciting or recruiting its employees for myself or others, both during my employment at SPG and for a period of one year following termination of my employment with SPG.

8. Upon termination of my employment with SPG, I will return all SPG property to SPG unless SPG's written permission to keep it is obtained.

9. The provisions of this Agreement will be separately construed. If any of them is held to be unenforceable, the remaining provisions will not be affected.

| EMPLOYEE SIGNATURE | DATE |
|---|---|
| Mark Dofue | Sept. 8, 2005 |

[1]Including: California Labor Code, Section 2870; Illinois 765ILCS1060/1-3, "Employees Patent Act,"; Washington Rev. Code, Title 49 RCW: Labor Regulations, Chapter 49.44.140; Minnesota Statutes, 13A, Section 181.78; and North Carolina General Statutes, Article 10A, Chapter 66, Commerce and Business, Section 66-57.1.

The scanned copy of this form is the official document of record. The original paper copy will be destroyed after the required retention period.

# EXHIBIT B

# IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900

LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7948
sfu@irell.com

June 20, 2006

## VIA U.S. MAIL

Mr. Marshall DePue
754 The Alameda, Suite 3310
San Jose, California 95126

Dear Mr. DePue:

I represent your former employer, Avago Technologies ("Avago"). I write to confirm your legal obligations to maintain the confidentiality of Avago's proprietary and trade secret information and not to disclose or use such information.

As you discussed with Waguih Ishak at your exit interview on April 14, 2006, your legal obligations to Avago continue, notwithstanding your decision to terminate your employment with Avago. In your position at Avago, you had access to, and were entrusted with, a significant amount of Avago confidential information. You are obligated by the Agreement Regarding Confidential Information and Proprietary Developments (ARCIPD) that you signed, a copy of which is enclosed, and by general legal principles, to maintain the confidentiality of such information and not to disclose or use such information.

As you are well aware, Avago makes significant investments of time and money to develop and maintain its confidential information. Such confidential information includes, without limitation, information regarding Avago's products, product development efforts, customer and supplier data, business plans, marketing and product strategies, manufacturing, product development and release schedules, operational and financial analyses, financial forecasts, and personnel. Avago's confidential information is critical to its ability to compete and is of substantial value to Avago. The unauthorized disclosure and/or misuse of Avago's confidential information would, at the very least, provide an unfair and unearned advantage to Avago's competitors. In addition, the unauthorized disclosure and/or misuse of Avago's confidential information could provide information that would not otherwise be available to Avago's competitors, such as insight into Avago's unannounced plans and strategies. Any inventions made by you as an Avago employee are the property of Avago, and in accordance with the ARCIPD agreement, you have a duty to disclose such inventions to Avago.

Because you have been exposed to a significant amount of Avago's most sensitive information, it is imperative that you not undertake any work for any company that would cause you to disclose, whether intentionally or inadvertently, any of Avago's confidential

1522340

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Mr. Marshall DePue
June 20, 2006
Page 2

information or to use your detailed knowledge of Avago's products, again whether
intentionally or inadvertently, to assist that company in researching, developing, marketing,
or selling products. If there is any risk of such use or disclosure, you must decline to
participate in such work. For instance, you should not participate in any activity, discussion,
or task where your knowledge of Avago confidential information could influence your
advice to your new employer or could provide your new employer with an improper
advantage in its research, development, marketing, or sales efforts.

Avago is especially concerned about your departure because you left to take a
position with Microsoft Corporation ("Microsoft") and we have been informed that you will
be working at Microsoft developing optical mice, and even more specifically laser mice, the
same products on which you worked at Avago. Indeed, we do not see how you could work
at Microsoft developing optical mice without disclosing and using, even if inadvertently, the
Avago confidential information entrusted to you during your employment with Avago. We
will therefore be raising this issue in a separate letter to Microsoft. If we have been
misinformed regarding your duties and responsibilities at Microsoft, please let us know
immediately.

Finally, please identify and return to Avago all confidential Avago documents and
property (your laboratory and inventor notebooks, for example). I am told that there are a
number of inventor notebooks that were issued to you and that you have reported as lost.
Those notebooks and the information contained therein are the property of Avago, and if
you later find those notebooks in your possession, they should be immediately returned to
Avago (including all copies thereof). To the extent that you are in possession of Avago
materials in electronic form (for example, e-mails or other electronic documents from your
employment at Avago), please identify those electronic materials and confirm that they have
been irretrievably deleted.

Avago expects you to comply with your continuing obligations to protect Avago's
confidential and proprietary information and not to disclose it or use it to benefit Microsoft
or any other potential employer. If you fail to comply with these obligations, however, you
will leave Avago with no alternative but to seek appropriate relief, including from the
courts. If you have any questions regarding your continuing confidentiality obligations to
Avago, I would be more than happy to answer them.

Regards,

Samuel K. Lu

SKL:kbj

1522340

# Agreement Regarding Confidential Information and Proprietary Developments (ARCIPD)

Please type or print in black ink.

| EMPLOYEE NAME (Last, First, M.I.) | EMPLOYEE NUMBER |
|---|---|
| Defue, Mark | 00569893 |

1. I am employed or desire to be employed by "New SPG" (SPG). I understand, however, that this Agreement is not a promise or a contract for employment by SPG.

2. This Agreement concerns trade secrets, confidential business and technical information, and know-how not generally known to the public, (hereinafter "Confidential Information"), which is acquired or produced by me in connection with my employment by SPG. Confidential Information may include, without limitation, information on SPG organizations, staffing, finance, information of employee performance, compensation of others, research and development, manufacturing and marketing, as well as information which SPG receives from others under an obligation of confidentiality. I agree:

   a. to use such information only in the performance of SPG duties;

   b. to hold such information in confidence and trust; and

   c. to use all reasonable precautions to assure that such information is not disclosed to unauthorized persons or used in an unauthorized manner, both during and after my employment with SPG.

3. This Agreement also concerns inventions and discoveries (whether or not patentable), designs, works of authorship, mask works, improvements, data, processes, computer programs and software (hereinafter called "Proprietary Developments") that are conceived or made by me alone or with others while I am employed by SPG and that relate to the research and development or the business of SPG, or that result from work performed by me for SPG. Such Proprietary Developments are the sole property of SPG, and I agree:

   a. to disclose them promptly to SPG;

   b. to assign them to SPG; and

   c. to execute all documents and cooperate with SPG in all necessary activities to obtain patent, copyright, mask works and/or trade secret protection in all countries, at SPG's expense.

   In compliance with prevailing provisions of relevant state statutes,[1] this Agreement does not apply to an invention for which no equipment, supplies, facility, or trade secret information of the employer was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) to the business of the employer, or (ii) to the employers actual or demonstrably anticipated research or development, or (b) the invention results form any work performed by the employee for the employer.

4. I agree to honor any valid disclosure or use restrictions on Confidential Information known to me and received from any former employers or any other parties prior to my employment by SPG, and I agree not to bring onto the premises of SPG any such information in whatever physical form without prior written consent of such former employers or other parties.

5. The product of all work performed by me during and within the scope of my SPG employment including, without limitation, any reports, documents, drawings, computer programs, devices and models, will be the property of SPG; and SPG will have the sole right to use, sell, license, publish or otherwise disseminate or transfer rights in such a work product.

6. I will not remove any SPG property from SPG premises without SPG's permission.

7. I agree not to disrupt, damage or interfere with the operation or business of SPG by soliciting or recruiting its employees for myself or others, both during my employment at SPG and for a period of one year following termination of my employment with SPG.

8. Upon termination of my employment with SPG, I will return all SPG property to SPG unless SPG's written permission to keep it is obtained.

9. The provisions of this Agreement will be separately construed. If any of them is held to be unenforceable, the remaining provisions will not be affected.

| EMPLOYEE SIGNATURE | DATE |
|---|---|
| | Sept. 8, 2005 |

[1] Including: California Labor Code, Section 2870; Illinois 765ILCS1060/1-3, "Employees Patent Act."; Washington Rev. Code, Title 49 RCW: Labor Regulations, Chapter 49.44.140; Minnesota Statutes, 13A, Section 181.78; and North Carolina General Statutes, Article 10A, Chapter 66, Commerce and Business, Section 66-57.1.

The scanned copy of this form is the official document of record. The original paper copy will be destroyed after the required retention period.

# Employment Acceptance Form

| Employee Name (Last, First, M.I.) | Reference Number |
|---|---|
| DePue   Mark  T. | |

## EMPLOYMENT ACCEPTANCE FORM

I accept New SPG's offer of employment as outlined in the offer letter dated _August 26 2005_
I further understand and agree that:

1. As a condition of continued employment, business needs may require that I relocate, travel, and/or work different shifts, positions, or overtime.

2. Participation in post-employment medical screening may be required. If medical restrictions cannot be reasonably accommodated, I may not be hired, or if hired, employment may be terminated.

3. I will comply with New SPG Standards of Business Conduct and Drug-Free Workplace Policy as they may be changed from time to time. I will sign the enclosed Agreement Regarding Confidential Information and Proprietary Developments concerning the protection of proprietary information and the ownership and assignment of ideas, inventions, and other intellectual property while employed at New SPG.

4. Any employment is not for a fixed period of time and is terminable at the will of either New SPG or me. No contrary representation or promises have been made to me and no such promise or representation shall be binding unless in writing and signed by an officer of New SPG.

| Employee Signature | Date |
|---|---|
| Mark DePue | Sept. 8, 2005 |

In order to promptly add you to New SPG's payroll and to accurately calculate and withhold taxes, please complete the following additional information:

| Date of Birth  **REDACTED** | Social Security Number  **REDACTED** |
|---|---|

**Resident address (if no permanent address yet, temporary address)**

| Street | City/State |
|---|---|
| 754 The Alameda Suite 330 | San Jose , CA |

| County | New SPG Work Location (City/State) |
|---|---|
| Santa Clara | San Jose, CA  Bldg. 90 |

**Mailing address (if different than resident address)**

| Street | City/State |
|---|---|
| | |

Page 1 of 1          The scanned copy of this form is the official document of record. The original            08/26/05
paper copy will be destroyed after the required retention period.

SV\470825.3

# EXHIBIT C

# IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900

LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7948
slu@irell.com

June 28, 2006

## VIA E-MAIL AND U.S. MAIL

Garth A. Winn, Esq.
Klarquist Sparkman, LLP
One World Trade Center
121 S.W. Salmon Street
Suite 1600
Portland, Oregon 97204

Dear Mr. Winn:

I write this letter on behalf of Avago Technologies ("Avago"), formerly the Semiconductor Products Group of Agilent Technologies, Inc. Avago has recently learned that one of its former employees, Marshall DePue, has taken a position with our client, Microsoft Corporation ("Microsoft"). Avago is informed that Mr. DePue will be working at Microsoft developing optical mice, and more specifically laser mice, the same products on which he worked at Avago.

While working at Avago, Mr. DePue had access to, and was entrusted with, a significant amount of Avago confidential information. He was and continues to be obligated to maintain the confidentiality of such information and not to disclose or use such information. Avago's confidential information is critical to its ability to compete and is of substantial value to Avago. The unauthorized disclosure and/or misuse of Avago's confidential information would, at the very least, provide an unfair and unearned advantage to Microsoft. In addition, the unauthorized disclosure and/or misuse of Avago's confidential information could provide information that would not otherwise be available to Microsoft, such as insight into Avago's unannounced plans and strategies.

We sent a letter to Mr. DePue on June 20, 2006 reminding Mr. DePue of his confidentiality obligations to Avago, emphasizing the consequences to Avago if its confidential information were disclosed and/or misused, and asking Mr. DePue to return all confidential Avago documents and property (including a number of inventor notebooks that Mr. DePue reported as lost). A copy of that letter is enclosed. However, we have received no response from Mr. DePue.

We are, therefore, also raising these issues with Microsoft, whom we understand to be Mr. DePue's new employer. Given Mr. DePue's access to Avago's most sensitive information regarding optical mice, we do not see how Mr. DePue could work at Microsoft

1527570

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Garth A. Winn, Esq.
June 28, 2006
Page 2

developing optical mice without disclosing and using, even if inadvertently, the Avago confidential information entrusted to him during his employment with Avago.  Therefore, please confirm that Microsoft will assign Mr. DePue to projects not involving optical mice during the term of his employment at Microsoft.  Also, please confirm that Microsoft and Mr. DePue do not possess the lost notebooks (or any other confidential Avago documents or property) and that Mr. DePue has not communicated and will not communicate to Microsoft the contents of the lost notebooks (or any other confidential Avago information).  Finally, we would like to know what other safeguards Microsoft intends to put into place to ensure that Mr. DePue does not disclose or use, even if inadvertently, Avago's confidential information.

I look forward to Microsoft's prompt response.

Regards,

Samuel K. Lu

SKL:kbj
Enclosures

1527570

# IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900

LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7948
slu@irell.com

June 20, 2006

**<u>VIA U.S. MAIL</u>**

Mr. Marshall DePue
754 The Alameda, Suite 3310
San Jose, California 95126

Dear Mr. DePue:

I represent your former employer, Avago Technologies ("Avago"). I write to confirm your legal obligations to maintain the confidentiality of Avago's proprietary and trade secret information and not to disclose or use such information.

As you discussed with Waguih Ishak at your exit interview on April 14, 2006, your legal obligations to Avago continue, notwithstanding your decision to terminate your employment with Avago. In your position at Avago, you had access to, and were entrusted with, a significant amount of Avago confidential information. You are obligated by the Agreement Regarding Confidential Information and Proprietary Developments (ARCIPD) that you signed, a copy of which is enclosed, and by general legal principles, to maintain the confidentiality of such information and not to disclose or use such information.

As you are well aware, Avago makes significant investments of time and money to develop and maintain its confidential information. Such confidential information includes, without limitation, information regarding Avago's products, product development efforts, customer and supplier data, business plans, marketing and product strategies, manufacturing, product development and release schedules, operational and financial analyses, financial forecasts, and personnel. Avago's confidential information is critical to its ability to compete and is of substantial value to Avago. The unauthorized disclosure and/or misuse of Avago's confidential information would, at the very least, provide an unfair and unearned advantage to Avago's competitors. In addition, the unauthorized disclosure and/or misuse of Avago's confidential information could provide information that would not otherwise be available to Avago's competitors, such as insight into Avago's unannounced plans and strategies. Any inventions made by you as an Avago employee are the property of Avago, and in accordance with the ARCIPD agreement, you have a duty to disclose such inventions to Avago.

Because you have been exposed to a significant amount of Avago's most sensitive information, it is imperative that you not undertake any work for any company that would cause you to disclose, whether intentionally or inadvertently, any of Avago's confidential

1522340

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Mr. Marshall DePue
June 20, 2006
Page 2

information or to use your detailed knowledge of Avago's products, again whether
intentionally or inadvertently, to assist that company in researching, developing, marketing,
or selling products. If there is any risk of such use or disclosure, you must decline to
participate in such work. For instance, you should not participate in any activity, discussion,
or task where your knowledge of Avago confidential information could influence your
advice to your new employer or could provide your new employer with an improper
advantage in its research, development, marketing, or sales efforts.

Avago is especially concerned about your departure because you left to take a
position with Microsoft Corporation ("Microsoft") and we have been informed that you will
be working at Microsoft developing optical mice, and even more specifically laser mice, the
same products on which you worked at Avago. Indeed, we do not see how you could work
at Microsoft developing optical mice without disclosing and using, even if inadvertently, the
Avago confidential information entrusted to you during your employment with Avago. We
will therefore be raising this issue in a separate letter to Microsoft. If we have been
misinformed regarding your duties and responsibilities at Microsoft, please let us know
immediately.

Finally, please identify and return to Avago all confidential Avago documents and
property (your laboratory and inventor notebooks, for example). I am told that there are a
number of inventor notebooks that were issued to you and that you have reported as lost.
Those notebooks and the information contained therein are the property of Avago, and if
you later find those notebooks in your possession, they should be immediately returned to
Avago (including all copies thereof). To the extent that you are in possession of Avago
materials in electronic form (for example, e-mails or other electronic documents from your
employment at Avago), please identify those electronic materials and confirm that they have
been irretrievably deleted.

Avago expects you to comply with your continuing obligations to protect Avago's
confidential and proprietary information and not to disclose it or use it to benefit Microsoft
or any other potential employer. If you fail to comply with these obligations, however, you
will leave Avago with no alternative but to seek appropriate relief, including from the
courts. If you have any questions regarding your continuing confidentiality obligations to
Avago, I would be more than happy to answer them.

Regards,

Samuel Lu

Samuel K. Lu

SKL:kbj

1522340

# Agreement Regarding Confidential Information and Proprietary Developments (ARCIPD)

Please type or print in black ink.

| EMPLOYEE NAME (Last, First, M.I.) | EMPLOYEE NUMBER |
|---|---|
| DeFue, Mark | 00569893 |

1. I am employed or desire to be employed by "New SPG" (SPG). I understand, however, that this Agreement is not a promise or a contract for employment by SPG.

2. This Agreement concerns trade secrets, confidential business and technical information, and know-how not generally known to the public, (hereinafter "Confidential Information"), which is acquired or produced by me in connection with my employment by SPG. Confidential Information may include, without limitation, information on SPG organizations, staffing, finance, information of employee performance, compensation of others, research and development, manufacturing and marketing, as well as information which SPG receives from others under an obligation of confidentiality. I agree:

   a. to use such information only in the performance of SPG duties;

   b. to hold such information in confidence and trust; and

   c. to use all reasonable precautions to assure that such information is not disclosed to unauthorized persons or used in an unauthorized manner, both during and after my employment with SPG.

3. This Agreement also concerns inventions and discoveries (whether or not patentable), designs, works of authorship, mask works, improvements, data, processes, computer programs and software (hereinafter called "Proprietary Developments") that are conceived or made by me alone or with others while I am employed by SPG and that relate to the research and development or the business of SPG, or that result from work performed by me for SPG. Such Proprietary Developments are the sole property of SPG, and I agree:

   a. to disclose them promptly to SPG;

   b. to assign them to SPG; and

   c. to execute all documents and cooperate with SPG in all necessary activities to obtain patent, copyright, mask works and/or trade secret protection in all countries, at SPG's expense.

   In compliance with prevailing provisions of relevant state statutes,[1] this Agreement does not apply to an invention for which no equipment, supplies, facility, or trade secret information of the employer was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) to the business of the employer, or (ii) to the employers actual or demonstrably anticipated research or development, or (b) the invention results form any work performed by the employee for the employer.

4. I agree to honor any valid disclosure or use restrictions on Confidential Information known to me and received from any former employers or any other parties prior to my employment by SPG, and I agree not to bring onto the premises of SPG any such information in whatever physical form without prior written consent of such former employers or other parties.

5. The product of all work performed by me during and within the scope of my SPG employment including, without limitation, any reports, documents, drawings, computer programs, devices and models, will be the property of SPG; and SPG will have the sole right to use, sell, license, publish or otherwise disseminate or transfer rights in such a work product.

6. I will not remove any SPG property from SPG premises without SPG's permission.

7. I agree not to disrupt, damage or interfere with the operation or business of SPG by soliciting or recruiting its employees for myself or others, both during my employment at SPG and for a period of one year following termination of my employment with SPG.

8. Upon termination of my employment with SPG, I will return all SPG property to SPG unless SPG's written permission to keep it is obtained.

9. The provisions of this Agreement will be separately construed. If any of them is held to be unenforceable, the remaining provisions will not be affected.

| EMPLOYEE SIGNATURE | DATE |
|---|---|
| | Sept. 8, 2005 |

[1]Including: California Labor Code, Section 2870; Illinois 765ILCS1060/1-3, "Employees Patent Act,"; Washington Rev. Code, Title 49 RCW: Labor Regulations, Chapter 49.44.140; Minnesota Statutes, 13A, Section 181.78; and North Carolina General Statutes, Article 10A, Chapter 66, Commerce and Business, Section 66-57.1.

The scanned copy of this form is the official document of record. The original paper copy will be destroyed after the required retention period.

# Employment Acceptance Form

| Employee Name (Last, First, M.I.) | Reference Number |
|---|---|
| DePue Mark T. | |

**EMPLOYMENT ACCEPTANCE FORM**

I accept New SPG's offer of employment as outlined in the offer letter dated _August 26 2005_
I further understand and agree that:

1. As a condition of continued employment, business needs may require that I relocate, travel, and/or work different shifts, positions, or overtime.

2. Participation in post-employment medical screening may be required. If medical restrictions cannot be reasonably accommodated, I may not be hired, or if hired, employment may be terminated.

3. I will comply with New SPG Standards of Business Conduct and Drug-Free Workplace Policy as they may be changed from time to time. I will sign the enclosed Agreement Regarding Confidential Information and Proprietary Developments concerning the protection of proprietary information and the ownership and assignment of ideas, inventions, and other intellectual property while employed at New SPG.

4. Any employment is not for a fixed period of time and is terminable at the will of either New SPG or me. No contrary representation or promises have been made to me and no such promise or representation shall be binding unless in writing and signed by an officer of New SPG.

| Employee Signature | Date |
|---|---|
| Mark DePue | Sept. 8, 2005 |

In order to promptly add you to New SPG's payroll and to accurately calculate and withhold taxes, please complete the following additional information:

| Date of Birth **REDACTED** | Social Security Number **REDACTED** |
|---|---|

**Resident address (if no permanent address yet, temporary address)**

| Street | City/State |
|---|---|
| 754 The Alameda Suite 330 | San Jose, CA |
| County | New SPG Work Location (City/State) |
| Santa Clara | San Jose, CA Bldg. 90 |

**Mailing address (if different than resident address)**

| Street | City/State |
|---|---|
| | |

Page 1 of 1          The scanned copy of this form is the official document of record. The original          08/26/05
paper copy will be destroyed after the required retention period.

SVV470825.3

# EXHIBIT D

Microsoft Corporation
One Microsoft Way
Redmond, WA 98052-6399

Tel 425 882 8080
Fax 425 936 7329
http://www.microsoft.com/

*Microsoft*

August 2, 2006

*SENT VIA REGULAR MAIL*

Samuel K. Lu
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276

Re:    **Mark DePue**

Dear Mr. Lu:

I am an in-house attorney at Microsoft Corporation.  I am writing to respond to concerns
you have raised regarding Mark DePue and his employment at Microsoft Corporation.
You raised these concerns in a June 20, 2006 letter to Mr. DePue and in a June 28, 2006
letter to Garth Winn.

Microsoft has reviewed the Agreement Regarding Confidential Information and
Proprietary Developments (ARCIPD) that was enclosed with your letter to Mr. DePue.
As I am sure you understand, the ARCIPD does not prohibit Mr. DePue from working for
Microsoft or from working on any particular products or technology.  Mr. DePue and his
management are aware of the non-disclosure obligations stated in the ARCIPD.
Microsoft has instructed Mr. DePue to abide by these obligations, and specifically not to
share any covered information with anyone at Microsoft or to use such information in the
course of his employment at Microsoft.  Mr. DePue has been assigned to work on a
project that would not benefit from use of any "confidential information" covered by the
ARCIPD.

Your letter to Mr. DePue seeks the return of "all confidential Avago documents and
property."  Mr. DePue assured Microsoft that he did not possess any such documents or
property.  At Microsoft's request, Mr. DePue searched his home and possessions to make
sure this was the case, and he did not find anything.

Very truly yours,

MICROSOFT CORPORATION

Orna A. Edgar
Senior Attorney
Legal & Corporate Affairs